**Pepi SCHAFLER, Plaintiff,**

v.

**FAIRWAY PARK CONDOMINIUM ASSOCIATION, et al.,
Defendants.**

No. 02–80127.

United States District Court,
S.D. Florida.

May 13, 2004.

Order Denying Reconsideration,
May 21, 2004.

Pepi Schafler, Walnut Creek, CA, pro se.

Hugo Alvarez, Esq. and Barry A. Postman, Esq., Cole, Scott, & Kissane, P.A., Miami, FL, for defendants.

### ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE AND GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES

HURLEY, District Judge.

THIS CAUSE comes before the court upon defendant Indian Springs Maintenance Association's motion to determine attorney's fees, and the report and recom-

mendation of the Honorable James M. Hopkins, United States Magistrate Judge, recommending that the defendant's motion be granted. Defendant is entitled to fees pursuant to the Eleventh Circuit Court of Appeals' order granting defendant's motion to determine entitlement to attorney's fees. Ms. Schafler has objected to the Magistrate Judge's recommendation to award attorney's fees in this case because defendant's attorney has allegedly already been compensated by defendant's liability insurance carrier.

Pursuant to Fed.R.Civ.P. 72(b), "The district judge ... shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." The rule requires that objections be filed within ten days of service of the report and recommendation, and that the objecting party arrange for transcription of sufficient portions of the record. Fed.R.Civ.P. 72(b) The district judge may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.* Portions of the report and recommendation that are not specifically objected to are subject to the clear error standard. The identical requirements are set forth in 28 U.S.C. § 636(b)(1).

■ The legal basis for Ms. Schafler's objection was specifically addressed and discounted by the court in *El–Shahawy v. Lee,* No. 95–269–CIV, 1999 U.S. Dist. LEXIS 6745 (M.D. Fla. Apr. 23 1999). In *El–Shahawy,* the plaintiff argued that the defendant was not entitled to attorney's fees because "these defendants are fully indemnified by the hospital, and their share of attorney's fees will likely be paid by the hospital's insurance policy." *Id.* at *28. The court rejected this argument and held that:

assuming that such coverage exists for all litigation fees incurred by Defendants in this suit, the Court does not believe that the equities would compel declining to award fees. The Court believes that, in the same manner that a personal injury tort defendant is precluded from relying on a plaintiff's receipt of insurance benefits wholly independent from the defendant wrongdoer in order to lessen the damages otherwise due to the plaintiff, Plaintiff herein may not rely on any insurance coverage that Defendants may have had in order to escape a fee award.

The court's decision was subsequently affirmed by the Eleventh Circuit, *Shahawy v. Lee,* 208 F.3d 1009 (11th Cir.2000) and was denied certiorari by the United States Supreme Court, *El Shahawy v. Sarasota County Pub. Hosp. Bd.,* 531 U.S. 825, 121 S.Ct. 72, 148 L.Ed.2d 36 (2000). Therefore, the decision in *El–Shahawy* persuades this court to grant the defendant's motion for attorney's fees. Since Ms. Schafler has not specifically objected to the Magistrate Judge's recommendation as to the amount of attorney's fees the court should reasonably award in this case, the court will adopt Judge Hopkins' recommendation.

Upon review of the report of the Magistrate Judge and plaintiff's objections, it is hereby **ORDERED** and **ADJUDGED**:

1. The Report and Recommendation of the United States Magistrate Judge [DE # 72] is **ADOPTED** in its entirety and incorporated herein by reference.

2. The Defendant's motion for attorney's fees [DE # 34] is **GRANTED** for the amount of $3,290.00 A final fees judgment will be issued in a separate order.

3. Plaintiff's motion to appear via telephone for the next hearing in this matter [DE # 67] is **DENIED** as **MOOT**.

*ORDER DENYING PLAINTIFF'S MO-TION FOR RECONSIDERATION OF ORDER GRANTING DEFEN-DANT'S MOTION FOR ATTOR-NEY'S FEES*

**THIS CAUSE** comes before the court upon plaintiff Pepi Schafler's motion for reconsideration of the court's May 13, 2004 order granting defendant's motion for attorney's fees. Ms. Schafler again contends that she is not responsible for attorney's fees in this case because the defendant's attorney's fees were paid for by its insurance company. In addition to the case cited in the court's prior order, the court now directs Ms. Schafler to the decision in *Ellis v. Cassidy*, 625 F.2d 227, 230 (9th Cir.1980). In *Ellis*, the Ninth Circuit Court of Appeals specifically considered the argument that "attorneys' fees should not have been awarded to some appellees because their legal fees were covered by insurance." The court categorically held that "[t]his argument is not persuasive." The court added that "the purpose of awarding attorneys' fees to a defendant in a civil rights case is to deter frivolous or harassing litigation; the fact that a defendant is insured is irrelevant to this purpose."

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that the plaintiff's motion for reconsideration [DE # 76] is **DE-NIED.**

*REPORT AND RECOMMENDATION AS TO DEFENDANT INDIAN SPRINGS MAINTENANCE ASSO-CIATION'S MOTION FOR ATTOR-NEY'S FEES (DE 34)*

**THIS CAUSE** has been reassigned by the Clerk of Court for the Southern District of Florida to United States Magistrate Judge James M. Hopkins for the Court to reconsider Defendant Indian Springs Maintenance Association's Motion for Attorney's Fees Pursuant to the Eleventh Circuit Court of Appeals Order Granting Defendant's Motion to Determine Entitlement to Attorney's Fees. (DEs 41 and 52). For the reasons that follow, this Court **RECOMMENDS** that the District Court award Defendant Indian Springs appellate attorney's fees in the amount of $3,290.00.

## BACKGROUND

1.) On August 7, 2003, the Eleventh Circuit Court of Appeals granted a motion for appellate attorney's fees filed by Defendant Indian Springs Maintenance Association. (DE 31). After granting the motion as to entitlement, the Eleventh Circuit remanded the motion to the District Court to determine the amount of reasonable attorney's fees to be awarded. (DE 31).

2.) On August 12, 2003, the Honorable Daniel T.K. Hurley, United States District Court Judge for the Southern District of Florida, ordered Defendant Indian Springs Maintenance Association to file a motion for attorney's fees accompanied by supporting documentation. (DE 32).

3.) Pursuant to the Court's order, Defendant Indian Springs Maintenance Association filed its motion and supporting documentation on August 26, 2003. (DE 34). The total amount of appellate fees requested by Defendant Indian Springs Maintenance Association is $4,562.20. (DE 34). In support of the claim, Defendant Indian Springs Maintenance Association attached to its motion an affidavit of Hugo Alvarez, Esq., wherein Mr. Alvarez attested that he was the attorney assigned to this matter, that the hourly rate charged to Defendant Indian Springs Maintenance Association was $125.00 per hour, that he worked 36.50 total hours on the appeal, and that he calculated the total fee to be $4,562.20. (DE 34, Affidavit of Mr. Alvarez). In addition to the affidavit of Mr. Alvarez, the motion for attorney's fees also attached copies of billing records to document the

tasks performed, the dates on which the tasks were performed, and the time taken to perform the tasks. (DE 34, Billing Records).

4.) This matter was originally referred to the Honorable Frank J. Lynch, United States Magistrate Judge for the Southern District of Florida. (DE 35). On September 29, 2003, without holding an evidentiary hearing, Judge Lynch recommended that the Court award attorney's fees in the amount of $4,562.50. (DE 37). However, upon objection by the Plaintiff, the Court recommitted the matter to Judge Lynch for the Court to conduct an evidentiary hearing. (DEs 38, 41). Before the evidentiary hearing occurred, Judge Lynch recused himself upon motion by the Plaintiff, and the undersigned was reassigned the matter. (DEs 47, 51, 52).

5.) By order dated February 11, 2004, this Court set the motion for an evidentiary hearing on March 9, 2004, at 2:00 p.m. (DE 53). On February 24, 2004, Defendant Indian Springs Maintenance Association filed another affidavit prepared by another attorney, Ms. Patricia Arias, Esq., wherein Ms. Arias attested that based upon her experience, the hourly rate of $125.00 was a reasonable hourly rate, and that the total fee claim of $4,562.50 [1] was a reasonable rate in the local community. (DE 63).

6.) On the morning of the hearing, March 9, 2004, at approximately 10:45 a.m., Mr. Alvarez's assistant Karina called chambers of the undersigned to state that Mr. Alvarez was in a deposition in Miami Dade and would not be able to attend the hearing scheduled for 2:00 p.m. Upon further discussions, Karina explained that Mr. Alvarez was in Miami Dade conducting three (3) depositions for a State court civil case, that the depositions were being conducted telephonically, but that he may be able to make it to court by 3:00 or perhaps 2:30 p.m. After speaking with the Plaintiff and learning that she did not object to this Court delaying the hearing until 3:00 p.m., this Court reset the hearing for 2:30 p.m.

## THE HEARING

7.) At 2:30 p.m., this Court commenced the evidentiary hearing. Plaintiff proceeded pro se, and Defendant Indian Springs Maintenance Association was represented by Hugo Alvarez, Esq. The Defendant argued that it was seeking only $4,562.20 in appellate attorney's fees, and that the hourly rate was only $125.00 per hour. In support of the claim, the Defendant chose to rely on its previously submitted motion and affidavit of Ms. Patricia Arias. Although Mr. Alvarez stated that his firm specifically declined to present live expert testimony, Mr. Alvarez stated that he would provide his own testimony in support of the fee claim.

Upon being sworn, Mr. Alvarez testified that as a result of the firm's appellate work in the instant matter, the majority of which was performed by Alvarez, his firm billed its client Indian Springs Maintenance Association for approximately 36 hours at a rate of $125.00 per hour. As to his background, Mr. Alvarez stated that he graduated from law school in 1998 from Tulane University School of Law, previously worked as a Staff Attorney for the Fifteenth Judicial Circuit and two other law firms, and presently works for the firm of Cole, Scott, & Kissane, P.A., where 90% of his work is devoted to trial practice, and 10% is devoted to appellate practice. He was admitted to the Florida Bar in 1999, and to the Eleventh Circuit in 2002.

1. Ms. Arias' affidavit states the fee claimed is $4,562.50; however, the actual motion in support of attorney's fees filed by Indian Springs claims a total amount of $4,562.20.

As to the prevailing market rates in Miami Dade County, Mr. Alvarez stated that according to one of the partners in his firm, Mr. Tom Scott, appellate work is typically billed at $250–$350.00 per hour. However, Mr. Alvarez explained that his firm only billed for the appellate work in this case at the rate of $125.00 per hour because the firm is Indian Springs Maintenance Association's insurance counsel, and that Cole, Scott & Kissane only billed the insurance company $125.00. According to Mr. Alvarez, the rate of $125.00 had been typically charged to the insurance company long before he even joined the firm. Moreover, as insurance defense counsel, the normal rate that is billed the insurance company ranges from $125.00 to $225.00. When the Court questioned Mr. Alvarez as to an appellate rate that would be charged by a 5–year associate in Miami Dade County, Mr. Alvarez stated that $250.00, rather than $350.00, would more likely be the charged hourly rate.

Mr. Alvarez next testified as to the qualifications of Ms. Patricia Arias, the attorney whose affidavit Mr. Alvarez submitted in support of his fee claim. Mr. Alvarez stated that Ms. Arias also graduated in 1998 from the University of Miami School of Law, and that as a sole practitioner, her practice is evenly divided between appellate and trial work. Mr. Alvarez stated that in his discussions with Ms. Arias, she stated that appellate work is typically billed at $250.00 to $350.00 per hour in Miami Dade County.

During the Plaintiff's case, the Plaintiff entered into evidence as Exhibits the appellate briefs filed during the pendency of the appeal in the Eleventh Circuit Court of Appeal, as well as Defendant Indian Springs Maintenance Association's Motion to Dismiss filed in the District Court prior to the appeal.

The Court then entertained arguments of the parties. The Plaintiff first argued that no fees should be awarded based on the theory of unjust enrichment. Next, the Plaintiff argued that the appellate work performed did not merit any award because much of the analysis included within the appellate brief of Defendant Indian Springs Maintenance Association was copied from the motion to dismiss filed in the trial court, or copied from other parties' submissions. In short, the Plaintiff contended that the fee claim was exorbitant for only a 12–page appellate brief, and that Defendant Indian Springs Maintenance Association was only seeking the attorney's fees out of retribution.

In response, Mr. Alvarez admitted that many of the issues argued on appeal were simple and straightforward, and that he did work in conjunction with counsel for the other named Defendants. Mr. Alvarez also acknowledged that the appellate brief and motion to dismiss filed in the District Court were similar. Nevertheless, Mr. Alvarez maintained that the appellate brief differed, albeit subtly, from the motion to dismiss filed with the District Court, and that in the appellate brief he also argued that the Plaintiff's brief was insufficient. Moreover, Mr. Alvarez claimed that he had a right, on behalf of Defendant Indian Springs Maintenance Association, to seek an award to reimburse him for the 36 hours of work that he personally performed, and that the hourly rate of $125.00 was reasonable. Upon questioning by this Court, Mr. Alvarez stated that 36 hours of work for an Eleventh Circuit brief was quite low, and that typically, both he and Ms. Patricia Arias found that an Eleventh Circuit brief would require closer to 100 hours of work or more.

After argument by the parties, the Court asked the parties whether Florida law required expert testimony in support of a claim for attorney's fees, citing to *Nants v. Griffin*, 783 So.2d 363 (Fla.Dist.

Ct.App.2001); *Levine v. Keaster,* 862 So.2d 876 (Fla.Dist.Ct.App.2003); *Rakusin v. Christiansen & Jacknin,* 863 So.2d 442 (Fla.Dist.Ct.App.2003); and, *Brake v. Murphy,* 736 So.2d 745 (Fla.Dist.Ct.App. 1999). In light of the parties' inability to address the issue at the hearing, this Court ordered the parties to address the issue via written memoranda to be filed by March 23, 2004, and reserved ruling on the Defendant's motion for attorney's fees.

8.) As ordered by the Court, the Plaintiff and Defendant each timely submitted their memoranda. (DEs 68, 69). While the Plaintiff argued that *Brake* and *Rakusin* required the Defendant to provide expert testimony in support of the fee claim, (DE 68, p. 5), the Defendant disagreed. In his memorandum, the Defendant argued that expert testimony is not required to substantiate a claim for attorney's fees, based on *Island Hoppers Ltd. v. Keith,* 820 So.2d 967 (Fla.Dist.Ct.App.2002), *disapproved of by Sarkis v. Allstate Ins. Co.,* 863 So.2d 210 (Fla.2003). (DE 69). However, the Defendant failed to discuss any of the cases cited by the Court during the March 9, 2004 hearing. (DE 69). In response, the Plaintiff argued that the Defendant is not entitled to any attorney's fees, and also filed an Addendum to Post Hearing Memorandum, wherein the Plaintiff lodged specific objections to time entries contained within the billing records attached to DE 34. (DEs 66, 71).

## ANALYSIS

### 1. *Erie* analysis

Where federal court jurisdiction rests on diversity of citizenship, the federal court must apply the substantive law of the forum State; however, procedural issues are governed by federal law. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To determine whether a state rule is procedural or substantive, the Court should apply the "outcome determinative test." *Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). In applying such test, the Court must consider the "twin goals" of the *Erie* doctrine: discouragement of forum-shopping and avoidance of inequitable administration of the laws. *See Hanna,* 380 U.S. at 468, 85 S.Ct. 1136. *See also Herbert v. Wal–Mart Stores, Inc.,* 911 F.2d 1044, 1047 (5th Cir.1990). In discussing the application of the outcome determinative test, our high court noted,

> ... *Erie* and its progeny make clear that when a federal court sitting in a diversity case is faced with a question of whether or not to apply state law, the importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

*Hanna,* 380 U.S. at 468, n. 9, 85 S.Ct. 1136. However, our high court has made clear that only when there is an actual conflict between state and federal substantive law are the concerns of *Erie* at issue. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 53, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Accordingly, this Court must determine whether any conflict exists between federal and Florida law as to the method to be employed in awarding attorney's fees.

In federal law, a reasonable attorney fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *American Civil Liberties Union v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999)

(citing *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). This "lodestar" may then be adjusted for the results obtained. *See Barnes,* 168 F.3d at 427 (*citing Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994)). The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes,* 168 F.3d at 436 (*quoting Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes,* 168 F.3d at 427. As to the type evidence that the fee claimant should produce in support of a fee claim, *Barnes* has stated,

> The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman,* 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.... A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." Id. (citations omitted).

168 F.3d at 427. The Eleventh Circuit has stated that the Court is not required to hold an evidentiary hearing prior to awarding attorney's fees. *See Thompson v. Pharmacy Corp. of America,* 334 F.3d 1242, 1245 (11th Cir.2003). Rather, attorney fee awards are generally based on affidavits and billing records submitted to the court. *See, e.g., Barnes,* 168 F.3d at 428, 430; *Norman,* 836 F.2d 1292, 1298;

*Dillard v. City of Greensboro,* 213 F.3d 1347, 1354, 1356 (11th Cir.2000).

Florida has adopted the federal lodestar approach to awarding attorney's fees. *See Florida Patient's Compensation Fund v. Rowe,* 472 So.2d 1145, 1150 (1985); *Standard Guaranty Ins. Co. v. Quanstrom,* 555 So.2d 828, 830 (Fla.1990). However, Florida law is anything but uniform with respect to the issue of what type evidence must be presented to support an attorney's fees award. As this Court noted to the parties at the evidentiary hearing held on March 9, 2004, some of the Florida appellate courts require that expert testimony be presented as to both the reasonableness of the hourly rate and the number of hours performed to substantiate any attorney's fee award. *See Nants,* 783 So.2d 363; *Levine,* 862 So.2d 876; *Rakusin,* 863 So.2d 442; and, *Brake,* 736 So.2d 745. Importantly, however, the Florida Supreme Court has never specifically held that such expert testimony is required. Rather, in *Lee Eng'g & Constr. Co. v. Fellows,* 209 So.2d 454, 457 (Fla.1968), the court stated that in the absence of a stipulation to the amount of fees, the burden is on the movant "... to show, by appropriate proof, through testimony, depositions, affidavits or otherwise, the services and benefits which he has rendered and to which he is reasonable entitled." *Lee* further noted that whether "live testimony" is required should be within the discretion of the judge, and that the court findings must be substantiated by the record. *See Lee,* 209 So.2d at 458.

In *Sierra v. Sierra,* 505 So.2d 432, 434 (Fla.1987), the Florida Supreme Court quoted *Lee,* 209 So.2d at 457, for the proposition that the attorney's fee award must be based on "appropriate proof, through testimony, depositions, affidavits or otherwise," and emphasized that the reasonableness of the award need only be supported

by competent and substantial evidence. Moreover, the Florida Supreme Court specifically stated that a trial court, when deciding the amount of an attorney's fee, may either hold an evidentiary hearing or provide a method for receiving evidence "... by affidavit or otherwise." *See Sierra*, 505 So.2d at 434.

A few years prior to *Lee*, in *Lewis v. Gramil Corp.*, 94 So.2d 174, 176 (1957), the court stated, in the context of receivership fees, that the burden was on the movant "... to show, by appropriate proof, through testimony, depositions, affidavits or otherwise, the services and benefits which he has rendered ... and ... to which he is reasonably entitled ..." The Florida Supreme Court recalled and specifically quoted the *Lewis* rule in *Southeast Bank, N.A. v. Ingrassia*, 562 So.2d 718, 719 (Fla.App.1990). Finally, other decisions from the State of Florida also provide that an attorney's fee award may not even require an evidentiary hearing. *See, e.g., Galarneau v. Caroly of Miami*, 299 So.2d 579, 581 (Fla.1974); *Phillips v. Florida Comm'n on Human Relations*, 846 So.2d 1221, 1221–1222 (Fla.Dist.Ct.App. 2003); *Rodriguez v. Campbell*, 720 So.2d 266 (Fla.Dist.Ct.App.1998).

█ A review of the federal and Florida rules as enunciated by the Florida Supreme Court regarding attorney's fees shows that there is no conflict between federal and Florida law because both federal and Florida allow for attorney's fee awards to be based upon affidavits and billing records without the need for an evidentiary hearing. Accordingly, the *Erie* concerns are not implicated in the instant case. However, assuming *arguendo* that the Florida rule as to the necessity of live expert testimony as enunciated by the appellate courts in *Nants*, 783 So.2d 363; *Levine*, 862 So.2d 876; *Rakusin*, 863 So.2d 442; and, *Brake*, 736 So.2d 745 constitute a conflict with the federal rule,

application of the "outcome determinative test" of *Hanna* leads this Court to conclude that such rule would be merely procedural for *Erie* purposes. Recalling the "twin goals" of *Erie* as noted in *Hanna*, this Court concludes that application of the federal rule that no expert testimony is required should not lead to forum shopping because the issue of attorney's fees is ancillary to the underlying cause of action. Parties are not likely to engage in forum shopping with respect to ancillary issues at the time the cause of action is initially filed. As to whether application of the federal rule would lead to an inequitable administration of the laws, this Court concludes that application of the federal law would not make an important difference to the character or result of the litigation so as to unfairly discriminate against citizens of the forum state because the attorney's fees litigation presently before the Court is only ancillary to the main cause of action, and the rule regarding the necessity of live expert testimony is only a minor part of that ancillary proceeding. Second, Florida law is far from clear in that the Florida Supreme Court appears to agree with the federal law, while the appellate courts seem to differ. Third, and perhaps most importantly, the United States Supreme Court has admonished that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Application of this principle, as well as application of the federal rule as to the computation of attorney's fees to the instant proceeding, cannot be said to lead to an unfair result.

This Court also notes that the Eighth and Ninth Circuits, in considering the issue of whether attorney fee hearings are necessary in diversity cases, have held that federal law controls. *See Karl's Inc. v. Sunrise Computers, Inc.*, 21 F.3d 230, 232

(8th Cir.1994); *Shakey's Inc. v. Covalt,* 704 F.2d 426, 435 (9th Cir.1983).

While it is true that in *McMahan v. Toto,* 256 F.3d 1120, 1133 (11th Cir.2001), the Eleventh Circuit stated that statutes allowing for the recovery of attorney's fees are substantive for *Erie* purposes, the fact remains that in *Toto,* the issue presented by the instant case was not before the Court. In *Toto,* the Eleventh Circuit did not consider the issue of which rules, federal or state, should be applied in calculating the amount of attorney's fees to be awarded, nor did *Toto* consider the issue of what types of evidence had to be adduced to support a fee award. Rather, the Court only considered the issue of entitlement to attorney's fees. *See Toto,* 256 F.3d at 1123 ("The third issue is whether under Florida's offer of judgment statute Toto is entitled to recover the attorney's fees ..."). This Court also notes that in *Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 259, n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), our high court stated that in diversity cases, where the state law does not run counter to a valid federal statute or rule of court, the state law either denying or granting a right to attorney's fees should be followed where the state law which reflects a substantial policy of the state. However, just as in *Toto,* the issue before the Court in *Alyeska Pipeline Service Co.* was entitlement to attorney's fees, not the type of evidence that had to be adduced to support an award of attorney's fees. For this same rationale, this Court concludes that the cases of *Tanker Management Inc. v. Brunson, M.D.,* 918 F.2d 1524, 1527–1529 (11th Cir.1990); *MRO Communications, Inc. v. AT & T Corp.,* 197 F.3d 1276 (9th Cir.1999); *King Resources Co. v. Phoenix Resources Co.,* 651 F.2d 1349 (10th Cir. 1981); and, *Perkins State Bank v. Connolly,* 632 F.2d 1306, 1311–1316 (5th Cir.1980) do not require this Court to apply the Florida rule as to expert testimony as enunciated by Florida's appellate courts.

## 2. Application of the Lodestar formula

■ Because there is no conflict between federal and Florida law as enunciated by the Florida Supreme Court, this Court will analyze the Defendant's claim for attorney's fees according to federal law. In deciding the amount of appellate attorney's fees to award to Defendant Indian Springs Maintenance Association, this Court considers: (1) Defendant Indian Springs Maintenance Association's memorandum containing billing record attachments and an affidavit of attorney Hugo Alvarez (DE 34); (2) the affidavit by Ms. Patricia Arias, Esq. (DE 63); (3) the record of the evidentiary hearing; (4) Defendant Indian Springs Maintenance Association's Memorandum of Law submitted after the evidentiary hearing (DE 69); (5) Plaintiff's Court Ordered Memorandum of Facts and Law Post March 9, 2004 Hearing (DE 68); and, (6) Plaintiff's Addendum to the Post Hearing Memorandum (DE 71). A review of the Plaintiff's numerous pleadings and her arguments as presented at the evidentiary hearing shows that Plaintiff does not object to the hourly rate. Rather, Plaintiff argues that Defendant seeks compensation for an unreasonable number of hours.[2] Because the Plaintiff filed her notice of appeal in this case on June 3, 2002 (DE 27), and the Eleventh Circuit granted Defendant's motion for appellate attorney's fees on August 5, 2003, (DE 31), this Court will only

---

**2.** As can by seen by Plaintiff's Addendum to Post Hearing Memorandum, Plaintiff also continues to argue that the Defendant is not entitled to any attorney's fees. (DE 71, pgs.

4–5). However, because the Eleventh Circuit has already ordered to the contrary, such argument is moot.

consider billing entries entered between June 3, 2002 and August 5, 2003.[3]

### A. Reasonable Hourly Rate

 Arriving at an award of attorney's fees requires the Court to first calculate the lodestar by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the attorney's services. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933; *Barnes*, 168 F.3d at 427. This Court may then adjust the lodestar upward or downward based on other considerations, including the results obtained and the quality of the representation. *See Hensley*, 461 U.S. at 434–435, 103 S.Ct. 1933; *Barnes*, 168 F.3d at 427; *Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1302. The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quotations omitted*). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427. Proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work. *See Norman*, 836 F.2d at 1299. A court may also use its own judgment and expertise to make an appropriate independent assessment of the value of an attorney's services. *See Id.* at 1303.

Prior to the adoption of the lodestar formula, courts applied the "*Johnson* factors" in arriving at a fee award.[4] *See Lee v. American Eagle Airlines, Inc.*, 93 F.Supp.2d 1322, 1329 (S.D.Fla.2000) (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974)). While the lodestar formula has replaced these factors, the Eleventh Circuit has permitted the courts to consider these factors to establish a reasonable hourly rate. *See Lee*, 93 F.Supp.2d at 1329–1330 (*citing Loranger*, 10 F.3d at 781, n. 6).

As to the type ideal fee application, *Barnes* has stated,

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different

---

**3.** While it is true that in federal law, time spent on a fee application is compensable, under Florida law, attorneys are not entitled to an award of attorney's fees for time spent litigating the amount of the fee. *See State Farm Fire & Cas. Co. v. Palma*, 629 So.2d 830, 832–833 (Fla.1993). Given that the instant case is in federal court on the basis of diversity jurisdiction, *Erie* would seem to require that this Court apply Florida law in this regard. *See McMahan*, 256 F.3d at 1132 ("It is clear that statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes.")

**4.** These factors include:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.
*See Johnson*, 488 F.2d at 717–19.

claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* (citations omitted).

168 F.3d at 427.

In Defendant Indian Spring's Maintenance Association's Motion to Determine Attorney's Fees (DE 34), the Defendant claims an hourly rate of $125.00. In support of that hourly rate, attorney Hugo Alvarez testified at the evidentiary hearing that his firm charged its client Indian Springs Maintenance Association $125.00 per hour because that is a standard rate charged for insurance defense work. However, Mr. Alvarez also testified that based on his discussions with a partner in his firm, Mr. Tom Scott, Esq., and a colleague, Ms. Patricia Arias, a privately retained attorney in Miami Dade County could have billed from $250.00 to $350.00 per hour for the appellate work performed. The Defendant also submitted Ms. Patricia Arias's affidavit in support of the claimed hourly rate. (DE 63). As noted previously, Plaintiff does not object to the claimed hourly rate. Accordingly, this Court **RECOMMENDS** that the District Court hold that a reasonable hourly rate for the Defendants is $125.00.

## B. *Reasonable Number of Hours*

Fee applicants must exercise "billing judgment." *Hensley*, 461 U.S. at 443, 103 S.Ct. 1933. Exercising billing judgment requires fee applicants to exclude from their applications all "excessive, redundant, or otherwise unnecessary [hours]," which are hours "that would be unreasonable to bill to a client and therefore one's adversary irrespective of the skill, reputation, and experience of counsel." *Barnes*, 168 F.3d at 428 (*citing Norman*, 836 F.2d at 1301). A firm may be compensated for work performed by separate attorneys on the case so long as the attorney's efforts are not unreasonably duplicative. *See Scelta v. Delicatessen Support Srvcs. Inc.*, 203 F.Supp.2d 1328, 1333 (M.D.Fla.2002). Objections concerning hours that should be excluded must be specific and "reasonably precise." *Barnes*, 168 F.3d at 428. *See also Norman*, 836 F.2d at 1301. Generalized statements that the time spent was unreasonable or unnecessary are entitled to little weight. *See Norman*, 836 F.2d at 1301. A fee opponent's failure to explain which hours are unnecessary or duplicative is fatal. *See Id. See also Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387, 1389 (11th Cir.1997).

In the fee application, the Defendant asserts that a total of 36.5 hours of legal work was performed. (DE 34, Exh. B, affidavit of Hugo Alvarez, Esq.). In her Addendum to Post Hearing Memorandum (DE 71) [5], Plaintiff has lodged 8 objections to the Defendant's billing entries. This Court will address each objection in turn.

(a) Addendum paragraph 3: Referring to page 1 [6] of the billing records, fourth line from the bottom, Plaintiff notes that the Defendant entered 5.20 hours to "Analyze Federal Rule of Civil Procedure 1.110." However, the Plaintiff notes that there is no such rule contained within the Federal Rules of Civil Procedure. (DE 71,

---

5. During this discussion, this Court refers to the "Addendum" without the specific docket entry number.

6. In her Addendum, Plaintiff misstates the page numbers for each of the billing entries. For this discussion, the undersigned refers the billing entries according to the page numbers on which they appear as attached to DE 34.

p. 2). According to the billing records, the time was billed on March 18, 2002, for analyzing "Federal Rule of Civil Procedure 1.110 relative to pleadings in order to assist in the preparation of our Motion to Dismiss (.80)" and researching "federal statutory authority relative to diversity jurisdiction . . ." (DE 34, billing records, p. 1). This Court concludes that the billing entry relates to pleadings that were filed while the case was still pending in the District Court, prior to the time the appeal was commenced. Thus, this Court concludes that the claimed 5.20 hours are not sufficiently related to the appeal. Moreover, this Court concludes that because the date of the entry precedes the date that the Plaintiff commenced her appeal, the billing entry does not fall within the applicable time frame for appellate attorney's fees and will not be considered by this Court in computing the number of hours reasonably spent on the appellate matter. Accordingly, this Court **RECOMMENDS** that the District Court sustain the Plaintiff's objection, albeit for a different reason than that offered by the Plaintiff.

(b) Addendum paragraph 3: Plaintiff refers to page 2, lines 5 and 8 from the top, arguing that the entries must be false because there was no scheduling conference planned, ordered, or attended, due to the fact that the case was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 71, p. 2). However, this Court notes that the dates of those entries precede the date that the Plaintiff commenced her appeal. Accordingly, such billing entries do not fall within the applicable time frame for appellate attorney's fees and will not be considered by this Court in computing the number of hours reasonably spent on the appellate matter. In that light, this Court **RECOMMENDS** that the District Court overrule the Plaintiff's objection.

(c) Addendum paragraph 4: Plaintiff alleges that a form attached to her Addendum, entitled "Form to Accompanying (sic) Application for Attorney's Fees," is false and represents attempted extortion. (DE 71, p. 2). This Court finds that such objection is merely conclusory and therefore insufficient under the dictates of *Barnes,* 168 F.3d at 428; and *Norman,* 836 F.2d at 1301. Accordingly, this Court **RECOMMENDS** that the District Court overrule the Plaintiff's objection.

(d) Addendum paragraph 5: Plaintiff repeats the substance of the billing entries found at line 3, page 3, and line 4, page 3 of the billing records attached to DE 34, but fails to state a specific objection as is required by *Barnes* and *Norman, supra.* (DE 71, pgs. 2–3). Accordingly, this Court **RECOMMENDS** that the District Court overrule the Plaintiff's objection.

(e) Addendum paragraph 6: Plaintiff takes exception to two billing entries appearing on page 3, line 7 of the billing records attached to DE 34, alleging that the 3.80 hours claimed were not related to the appeal. Plaintiff also contends that .10 hours claimed for analyzing correspondence from Plaintiff likewise were not related to the appeal. Specifically, Plaintiff contends that she drafted a letter to the President of the Indian Springs Board, telling him that he was acting like the social director of a cruise ship in correspondence that he had mailed to the entire Indian Springs Community, and that the letter billed at .10 hours constitutes a response to her letter to the President. (DE 71, p. 3). According to the billing records, .10 hours was billed for preparing correspondence to the Plaintiff directing her to cease communication with Indian Springs Maintenance Association. The remaining time of 3.70 hours was billed for preparing a status report to the client as to the procedural overview of the case. (DE 34,

p. 3 of billing records). Noting that the Defendant's billing entry as to the letter to the Plaintiff is consistent with the Plaintiff's specific objection, this Court concludes that the letter to the Plaintiff does not seem sufficiently related to the appeal in this matter. Thus, this Court **RECOMMENDS** that the District Court sustain the Plaintiff's objection in part, overrule the objection in part, and deduct .10 hours.

(f) Addendum paragraph 7: Plaintiff repeats the substance of the billing entry found at page 3, line 8, and alleges that Mr. Alvarez should already know the Eleventh Circuit rules as to filing requirements for appellate briefs. (De 71, p. 3). This Court finds that it is entirely reasonable for counsel to refer to the rules of the Eleventh Circuit as to filing requirements. Accordingly, this Court **RECOMMENDS** that the District Court overrule the Plaintiff's objection.

(g) Addendum paragraph 8: Plaintiff objects to a billing entry found at page 3, line 9, alleging that a claim of 4.80 hours for preparing a section of the appellate brief is excessive because that section was copied verbatim from a previously filed motion to dismiss and comprised of only a couple of paragraphs in the appellate brief. (DE 71, p. 3). After having reviewed Defendant's Indian Spring's Maintenance Association's Response Brief filed with the Eleventh Circuit as well as Defendant's Indian Spring's Maintenance Association's Motion to Dismiss filed in this Court prior to appeal, both of which were entered into evidence at the evidentiary hearing as Plaintiff's exhibits 1 and 4, this Court finds that Defendant was required to repeat in its appellate brief much of its argument raised in its motion to dismiss because the issue before the Eleventh Circuit was whether the District Court erred in granting the motion to dismiss. Accordingly, this Court **RECOMMENDS** that the District Court overrule the Plaintiff's objection.

(h) Addendum paragraph 9: Plaintiff objects to a time entry found on page 3, lines 11–13, where the Defendant allegedly claims 1.8 hours for filing for a motion for extension of time. (DE 71, p. 4). However, this Court notes that Plaintiff has mistakenly lumped together 3 separate billing entries found on page 3 of the billing records attached to DE 34. Moreover, a review of the entries found at lines 11–13 shows that the Defendant billed only .10 hours for analyzing the Plaintiff's response to the Defendant's motion for extension of time. A review of the entries found at lines 11–13 also shows that the entries were directly related to the appeal. Accordingly, this Court **RECOMMENDS** that the District Court overrule the Plaintiff's objection.

(I) Addendum paragraph 10: Plaintiff lodges six separate objections to page 4 of the billing records attached to DE 34, at lines 2, 4, 5, 6, 7, and 8, contending that the Defendant is claiming compensation for hours that are not compensable because the entries document communications with counsel's client, and research related to the issue of whether counsel may claim attorney's fees. (DE 71, p. 4). A review of these entries as found on DE 34, p. 4 of the billing records, shows the following: in line 2, the Defendant billed .10 hours for analyzing correspondence from the Plaintiff to the clerk of court relating to the status of the appeal and .10 hours for preparing correspondence to the client regarding the status of the appeal; in line 4, the Defendant billed .20 hours for preparing correspondence to the client discussing the Plaintiff's request for en banc review of the matter and the legal basis for such request; in line 5, the Defendant billed .40 hours for analyzing the Plaintiff's Motion Demanding Accounting and Motion

to Vacate Lien; in line 6, the Defendant billed .10 hours for a telephone conference with the client wherein the procedural posture of the claim was discussed; in line 7, the Defendant billed 2.60 hours for legal research on the issue of how to obtain an award of costs in the Eleventh Circuit; and, in line 8, the Defendant billed 2.50 hours for legal research and preparation of pleadings regarding the claim of attorney's fees in the Eleventh Circuit. For the most part, this Court finds that these entries seem sufficiently related to the appeal and that the entries are not excessive, such that the Defendant should generally be awarded attorney's fees for those entries. However, as to the claim listed in line 5, wherein the Defendant claims .40 hours for analyzing the Plaintiff's Motion Demanding Accounting and Motion to Vacate Lien, this Court finds that such claim is not sufficiently related to the appeal. Accordingly, this Court **RECOMMENDS** that the District Court sustain the Plaintiff's objection as to page 4, line 5, and deduct the claimed .40 hours. Moreover, a review of these entries also shows that as to a portion of the hours claimed, the billing entries fail to note what task was completed during that time. Specifically, in line 7, the Defendant billed a total of 2.60 hours; however, the Defendant allotted only .80 hours to legal research regarding the issue of costs, and the remainder of the entry is incomplete. Moreover, in line 8, the Defendant billed a total of 2.50 hours; however, only 1.20 is specifically allocated to researching the issue of attorney's fees in the Eleventh Circuit, and the remainder of the entry is incomplete. Thus, in lines 7 and 8, a total of 3.10 hours is not specifically accounted for. Due to the incomplete entries, this Court finds that lines 7 and 8 of page 4 of the billing records are inadequate for purposes of demonstrating that the total claimed hours were reasonably expended for litigation on this matter. See Hensley, 461 U.S. at 433, 103 S.Ct. 1933;

Lee 93 F.Supp.2d at 1333. Accordingly, this Court **RECOMMENDS** that the District Court deduct 3.10 hours from the hours claimed in lines 7 and 8 of page 4. Thus, as to paragraph 10 of the Addendum, this Court RECOMMENDS that the District Court overrule the Plaintiff's objections in part, sustain the objections in part, and deduct a total of 3.50 hours from the hours claimed in lines 5, 7, and 8 of page 4 of the billing records attached to DE 34.

In sum, after considering each of the Plaintiff's specific objections contained within her Addendum to Post Hearing Memorandum (DE 71), and for the reasons previously discussed, this Court **RECOMMENDS** that the District Court deduct from the Defendant's claimed 36.5 hours a total of 3.6 hours (the sum of .10 hours from page 3, line 7, and 3.5 hours from lines 5, 7, and 8 of page 4 of the billing records attached to DE 34).

As the Plaintiff has failed to lodge any objections with respect to any other billing entries, this Court accepts all other hours claimed by the Defendant. See Scelta, 203 F.Supp.2d at 1333 (accepting all billing entries not properly objected to). Recalling that the Defendant claimed a total of 36.5 hours (DE 34), and after subtracting 3.6 hours as a result of the Plaintiff's objections, this Court finds that the remaining billing entries appearing on pages 1–4 of the billing records attached to DE 34 account for a total of 32.9 compensable hours.

However, this Court finds that the 32.9 compensable hours should be reduced by 20% due to the poor quality of representation directly observed by this Court on three occasions. See Hensley, 461 U.S. at 434–435, 103 S.Ct. 1933; Barnes, 168 F.3d at 427; Loranger, 10 F.3d at 781; Norman, 836 F.2d at 1302. First, this Court notes that during the evidentiary

hearing held on March 9, 2004, this Court specifically ordered the parties to submit a memorandum of law addressing four Florida cases [7] wherein the State appellate courts held that any award of attorney's fees must be supported by expert testimony as to reasonableness of the hourly rate and the hours expended, and whether this Court should require the Defendant to present live expert testimony at a subsequent hearing. In so doing, this Court specifically cited the cases in full for the record so that the parties would have no trouble finding the opinions. Despite the clarity of this Court's order, the Defendant failed to mention even one of the cases that was cited by this Court. Rather, the Defendant quoted and squarely relied on *Island Hoppers Ltd.*, 820 So.2d 967, for the proposition that live expert testimony would not be needed at a subsequent hearing. (DE 69). However, the Defendant completely failed to acknowledge that in a subsequent opinion rendered by the same court that rendered *Island Hoppers*, namely *Rakusin*, 863 So.2d at 444, *a case that was cited by this Court at the evidentiary hearing*, the court acknowledged that its *Island Hoppers* decision was *not* the law of the state, and that the existing caselaw required the presentation of corroborating expert testimony to support an attorney's fee award. The only reference that the Defendant made to the questionable reliability of *Island Hoppers* appears in footnote 1, wherein the Defendant stated that *Island Hoppers* has been called into doubt by subsequent cases in other districts. (DE 34, p. 3, n. 1). Moreover, the Defendant subsequently boldly stated, "*Island Hoppers* is clear in that expert fees witnesses are no longer a necessary part of the attorney's fees hearings." (DE 34, p. 5). This Court finds that the overall

effect of combining such a statement with footnote 1 is that the Defendant attempted to mislead this Court as to the state of the law in Florida. Finally, this Court notes that the Defendant made no reference to the *Erie* issue presented by the instant case.

Second, this Court recalls that on the morning of the evidentiary hearing, only hours before the hearing was to commence at 2:00 p.m., the Defendant called chambers to inform this Court that Mr. Alvarez would not be able to attend the hearing because he was taking depositions. Even though the Plaintiff had to fly from California to attend the hearing, the Defendant made no attempts to file a written motion for continuance of the hearing, which had been specially set since February 11, 2004. (DE 53). Only after further discussions with Mr. Alvarez's assistant was it revealed that Mr. Alvarez was in Miami Dade County taking telephonic depositions in a state civil case. Moreover, only after this Court indicated that the hearing would not be changed did Mr. Alvarez's assistant state that she thought that Mr. Alvarez could be present by 3:00 or perhaps 2:30 p.m. This Court only agreed to postpone the hearing for 30 minutes after the Plaintiff stated that she did not object to such a delay. In light of the occurrences that morning, this Court believes that the Defendant engaged in such tactics simply because the Defendant did not wish to proceed with the hearing.

Finally, at the hearing, counsel was unprepared to advise the Court as to what type proof was required to sustain his motion. When the Court asked counsel whether expert testimony was required to support an attorney's fees claim, as indicated by the appellate cases cited by the

---

7. *Nants,* 783 So.2d 363; *Levine,* 862 So.2d 876; *Rakusin,* 863 So.2d 442; and, *Brake,*

736 So.2d 745.

Court, counsel was unable to directly answer the question. Rather, counsel merely stated that his firm made the economic decision not to hire an expert for the evidentiary hearing because the firm did not think an expert was necessary. Counsel made no mention of the *Erie* problem presented by the instant case, and failed to give any analysis of what type of proof was necessary to sustain his burden at the hearing.

In support of this Court's recommendation that the claimed number of hours be reduced by 20%, this Court relies on *Bailey v. Runyon*, 50 F.Supp.2d 891, 895 (D.Minn.1999), where the court awarded attorney's fees in the amount of only $2,000, out of a claimed total of $85,740.00, due to the poor quality and carelessness of counsel's written work. As a basis for the low award, the court pointed out that Plaintiff's petition for attorney's fees did not comport with explicit orders issued by the court on two occasions, and was otherwise legally insufficient in that the petition failed to provide any caselaw in support of the request, and made no attempt to properly substantiate the claimed hourly rate. *See Bailey*, 50 F.Supp.2d at 894. Moreover, the court noted that in general, counsel's written submissions were sloppy and appeared to be hastily completed because they contained numerous spelling and grammatical errors, and that his trial performance was poor in that at trial, counsel appeared unprepared and disorganized. *See Id.* at 895.

Just as in *Bailey*, the Defendant's written submission as to the necessity of expert evidence in support of his attorney's fees claim failed to comport with this Court's explicit orders to address the Florida cases of *Nants, Levine, Rakusin*, and *Brake.* Moreover, as in *Bailey*, counsel appeared unprepared at the evidentiary hearing. Such performance warrants a reduction of the claimed reasonable number of hours.

*See also Lee*, 93 F.Supp.2d at 1330–1331 (reducing the claimed hourly rate in part because of counsel's unprofessional performance during the litigation; and, noting that the court could have also reduced the claimed number of hours as a result of counsel's misconduct).

Therefore, in light of the poor quality of performance observed by this Court, this Court **RECOMMENDS** that the District Court reduce the total number of compensable hours by 20%, to a total of 26.32 compensable hours.

### C. Computation of the Total Award

This Court therefore computes the Defendant's total attorney's fees award as follows: **$125.00 per hour × 26.32 hours reasonably spent = $3,290.00.**

## RECOMMENDATION TO THE DISTRICT COURT

Accordingly, it is hereby **RECOMMENDED** that the District Court award appellate attorney's fees to the Defendant in the amount of $3,290.00.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T.K. Hurley, District Court Judge for the Southern District of Florida, within ten (10) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir.1982), *cert. denied*, 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir.1988), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d

386 (1988); *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).